**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| NATIONAL INSTITUTE OF FAMILY AND LIFE ADVOCATES, d/b/a NIFLA, a Virginia nonstock corporation; | )<br>)<br>)<br>) |
| A DOOR OF HOPE PREGNANCY CENTER Inc., a Delaware not-for-profit corporation; | )<br>)<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | )<br>)<br>) |
| KATHY JENNINGS in her official capacity, as Attorney General for the state of Delaware | )<br>)<br>)<br>) |
| Defendant. | )<br>) |

Civil Action No.:

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

COME NOW Plaintiffs, National Institute of Family and Life Advocates, d/b/a NIFLA ("NIFLA") and A Door of Hope Pregnancy Center, Inc. ("A Door of Hope") by and through their undersigned attorneys, for their Complaint for Injunctive and Declaratory Relief against the Defendant, Kathy Jennings, Attorney General for the State of Delaware, in her official capacity, and allege as follows:

INTRODUCTION

1.      In 2018, the United States Supreme Court struck down a California law compelling pregnancy care centers to speak government mandated messages. *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 585 U.S. 755, 775 (2018).

2.      Last year, Delaware enacted almost the exact same law that the Supreme Court held was unconstitutional.

3.      Delaware pregnancy care centers offer women free information and services, and do so at no cost to the government. They empower women who are or may be pregnant to choose to give birth in circumstances where they wish to do so but feel they do not have the necessary resources or social support. But the state is targeting these centers through unconstitutional and burdensome speech regulations.

4.      This case is a challenge by pro-life pregnancy care centers, to a state law significantly burdening their ability to speak and even forcing them to speak messages at odds with their mission and the truth.

5.      Specifically, Plaintiffs challenge the constitutionality and legality of Senate Bill 300, an act to amend Title 7 of the Delaware Code relating to crisis pregnancy centers. The Act is referred to hereinafter as SB 300. SB 300 was signed into law by Governor Carney on September 26, 2024, and takes effect March 26, 2025. A copy of SB 300 is attached hereto as Exhibit A.

6.      Plaintiff National Institute of Family and Life Advocates (NIFLA) is a non-profit religious network of facilities with four member facilities in Delaware that offer medical services, including A Door of Hope. It seeks to empower women and men facing unplanned pregnancies to choose life and to protect life-affirming pregnancy care centers by equipping them with counsel, education, training, and support. It aims to develop a network of life-affirming ministries in every community across the nation. The speech and ministry of NIFLA reflect NIFLA's pro-life viewpoint.

7.      Plaintiff A Door of Hope provides pro-life information and practical support to women in unplanned pregnancies so that they will be supported in choosing to give birth. It

provides information and support that is both medical and non-medical, is free of charge, and is offered in furtherance of its pro-life religious viewpoint and conscience.

8.     SB 300, however, imposes government compelled speech upon the Plaintiff pregnancy care centers due to their support for pregnant women, and in ways that undermine the centers' messages.

9.     SB 300 requires pregnancy care centers, such as A Door of Hope and other similar NIFLA members, to post Compelled Statements within their facilities and in all their advertising materials negatively emphasizing that they do not have a "licensed medical provider" (as defined by the statute) on staff directly supervising the provision of services.

10.     The Compelled Statement is both burdensome and misleading.

11.     The Compelled Statement would severely limit and in some cases actually prevent Plaintiffs' speech through digital advertising, such as Google ads, due to character limits, drowning out the pregnancy care centers' free speech.

12.     The Compelled Statement must be posted merely because A Door of Hope serves pregnant women from a pro-life perspective, and not with any prerequisite that the center has engaged in any improper behavior or has ever suggested that the care women receive is from unlicensed personnel impersonating licensed medical personnel.

13.     SB 300 is therefore unconstitutional under the First Amendment to the United States Constitution. It is a classic example of compelled speech in violation of the Free Speech Clause. The law is expressly content-based both because it compels the content of speech and because it regulates only speakers who wish to discuss the subject of pregnancy from a pro-life perspective rather than any other health topic.

14.     The law is also viewpoint based, because it is designed to target pro-life pregnancy care centers and burdens, restricts, chills, or in some circumstances legally prohibits their message. It does not similarly impact pro-abortion advocacy groups, individuals, or facilities.

15.     The law also infringes upon the free exercise rights of the pregnancy care centers which are founded with a religious mission to engage and support women, but will be forced to drown out their religiously motivated messages (including ones with primarily or exclusively religious content) and present misleading information to undercut the opportunities the pregnancy care centers have to engage pregnant women in unplanned or unsupported pregnancies.

16.     The law compels pregnancy care centers to make untrue and misleading statements contrary to their religious mission and beliefs.

17.     Accordingly, preliminary and permanent injunctive and declaratory relief against SB 300 are warranted.

18.     A Door of Hope is directly regulated by SB 300.

19.     NIFLA asserts associational standing on behalf of its Delaware members, that, just like A Door of Hope, SB 300 regulates and compels them to speak in violation of their views and mission.

20.     Plaintiffs seek declaratory relief under 28 U.S.C. §§ 2201–02, and the First Amendment of the United States Constitution.

21.     Plaintiffs seek injunctive relief under 28 U.S.C. § 1343 and Fed. R. Civ. P. 65.

22.     Plaintiffs seek attorney's fees and costs under 42 U.S.C. § 1988.

23.     The Act goes into effect March 26, 2025.

24.      Therefore, preliminary injunctive relief is needed before that date in order to prevent irreparable harm to the rights of Plaintiffs and NIFLA's Delaware members.

**JURISDICTION AND VENUE**

25.     This action arises under 42 U.S.C. § 1983 et seq. (the "Civil Rights Act") and the First Amendment to the United States Constitution.

26.     The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

27.     The Court has jurisdiction to issue the requested declaratory relief pursuant to 28 U.S.C. §§ 2201 & 2202 and Federal Rule of Civil Procedure 57.

28.     The Court has jurisdiction to award the requested injunctive relief under 42 U.S.C.A. § 20000bb-1(c), 28 U.S.C. § 1343(a)(3), and Federal Rule of Civil Procedure 65.

29.     The Court has jurisdiction to award reasonable attorneys' fees and costs under 42 U.S.C. § 1988(b).

30.     Venue lies in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to all claims occurred in this district, including where Plaintiff A Door of Hope and NIFLA's Delaware members offering medical services are located and is the district in which the law would be enforced.

**PARTIES**

31.     Plaintiff NIFLA is a religious not-for-profit corporation duly incorporated under the laws of Virginia, with its principal place of business at 5610 Southpoint Ctr. Blvd., #103, Fredericksburg, VA 22407.

32.     NIFLA is comprised of member pregnancy care centers from across the nation, including four member facilities in Delaware that offer medical services and are regulated by SB 300.

33.     Plaintiff, A Door of Hope Pregnancy Center (A Door of Hope) is a religious faith-based not-for-profit corporation duly incorporated under the laws of Delaware, and is located at

3407 Lancaster Pike, Ste B, Wilmington, DE 19805. A Door of Hope's corporate agent and Executive Director is Rachel Metzger.

34.    Defendant Kathy Jennings is the Attorney General for the State of Delaware, 820 N. French St. Wilmington, DE 19801, and is sued in her official capacity. Under SB 300, she is responsible for enforcing its provisions against entities like the Plaintiffs and NIFLA's Delaware Members.

## FACTUAL ALLEGATIONS

### A Door of Hope

35.    A Door of Hope Pregnancy Center is a Christ-centered organization that empowers people to make life-affirming and healthy decisions, particularly about sex, pregnancy and relationships.

36.    A Door of Hope provides help and pro-life information to women in unplanned or unsupported pregnancies so that they will be supported in choosing to give birth.

37.    A Door of Hope provides both medical and non-medical pro-life information and services for no charge to women in unplanned or unsupported pregnancies.

38.    A Door of Hope does not receive any government funding for the provision of its services. It empowers women who are or may be pregnant to choose to give birth in circumstances where they wish to do so but feel they do not have the necessary resources or social support.

39.    A Door of Hope desires to inform, educate, and empower the women and men it serves with the hope they will view parenting and adoption as viable alternatives to abortion.

40.    A Door of Hope is a faith-based organization that pursues its pro-life message and activities as an exercise of its conscience and religious belief that life is a gift of God from the moment of conception and should not be destroyed by abortion.

41.     A Door of Hope provides its information and services in furtherance of its pro-life religious mission, viewpoint, and conscience, desiring to empower the women it serves to choose life for their child, rather than abortion.

42.     Non-medical services provided by A Door of Hope include: adoption information and referrals, post abortion support, community referrals, educational programs such as for pregnancy and parenting, baby items, diapers, and spiritual support. Its educational programs include lessons on breastfeeding, diet, pre-natal care, infant care, finances, parenting, including faith-based lessons.

43.     Medical services provided by A Door of Hope include: lab quality urine pregnancy tests, limited obstetrical ultrasounds, nurse consultation, proof of pregnancy, prenatal vitamins, and post-abortion assessments.

44.     A Door of Hope's registered nurses also provide pregnancy options counseling.

45.     The medical team at A Door of Hope consists of a volunteer medical doctor who serves as its medical director, a volunteer radiologist, and several registered nurses (RNs). These medical professionals provide and directly supervise all of A Door of Hope's medical services.

46.     The medical director, medical team, and other staff and volunteers at A Door of Hope, share its religiously motivated pro-life beliefs, dispositions of conscience, and motivation for providing their services.

47.     A Door of Hope advertises their medical and non-medical services using digital advertising.

48.     A Door of Hope has identified a need for free sexually transmitted disease (STD) testing in its community. Before passage of SB 300, A Door of Hope was planning to meet that need by offering free testing to begin in late 2025 or in 2026.

49.     A Door of Hope intended to advertise new services and to effectively do so, it would need to communicate about these services. Were it not for SB 300, A Door of Hope would offer these services and communicate about these services.

50.     A Door of Hope will not be able to communicate about these free services it wants to offer without the SB 300 Compelled Statement.

51.     While A Door of Hope plans to continue to offer its existing services and existing communications despite the law, A Door of Hope is not willing or able to take on these new STD testing services and communications about those services because of the risk of additional threat of prosecution and liability.

Pregnancy Care Center Members of NIFLA

52.     NIFLA is a non-profit membership organization of centers providing pro-life information and services to women in unplanned pregnancies.

53.     NIFLA is a Christian, non-denominational ministry.

54.     As a registered 501(c)(3) nonprofit organization NIFLA is devoted to pursuing its religious, educational, and charitable purposes.

55.     NIFLA provides its pro-life pregnancy care center members with legal resources and counsel, with the aim of developing a network of life-affirming ministries in every community across the nation and equipping them so that they may better fulfill their mission to save lives.

56.     NIFLA's mission is to empower the choice for life by: equipping pregnancy care centers with legal counsel and support; enabling pregnancy care centers to convert to and maintain medical clinic status; and energizing pregnancy care centers with a renewed vision for the future.

57.     NIFLA and its members affirm that God is sovereign over all life, and that he calls and commands them to make special efforts to protect the unborn.

58.     NIFLA has four members in Delaware, each of which offers medical services, including A Door of Hope. The other members do so in ways materially similar to the allegations made herein about A Door of Hope.

59.     NIFLA's Delaware members that offer medical services are religious organizations that pursue their pro-life message and activities as an exercise of their religious beliefs.

60.     NIFLA's own religious mission includes helping those members advance their religious beliefs.

61.     NIFLA's Delaware members that offer medical services offer limited obstetric ultrasounds and pregnancy tests, among other services, and do so under the direction of a licensed Delaware physician serving as medical director of the facility.

62.     The physician's orders are typically carried out by registered nurses, such as for pregnancy tests and ultrasounds. These registered nurses provide or directly supervise the members' medical services.

63.     NIFLA's Delaware members are subject to SB 300's compelled speech requirements.

64.     NIFLA has associational standing to represent all of its Delaware members that offer medical services. See *New York State Club Ass'n v. City of New York*, 487 U.S. 1, 9 (1988).

65.     The members of NIFLA would otherwise have standing to sue in their own right in this case.

66.     The interests that NIFLA seeks to protect among its Delaware members that offer medical services are germane to NIFLA's purpose as a membership association, including the purpose to support its pro-life pregnancy care center members and enable them to carry out their missions consistent with their pro-life and religious viewpoints.

67.    Neither the claims asserted, nor the relief requested herein, requires participation in this suit of all of NIFLA's individual members in Delaware that offer medical services, but can be awarded to those NIFLA members as a group.

**SB 300'S UNLAWFUL PROVISIONS AND TARGETTING OF PRO-LIFE CENTERS**

68.    SB 300 is meant to "amend title 6 of the Delaware code relating to crisis pregnancy centers." Exhibit A.

69.    "Crisis pregnancy centers," is another name for pregnancy care centers or pregnancy resource centers, which are faith-based, community-based, not-for-profit, pro-life organizations which provide care and resources to assist and empower women to choose to give birth.

70.    By definition "crisis pregnancy centers" have the viewpoint of being pro-life. There are no pro-abortion "crisis pregnancy centers" or pregnancy care centers. If a center was a pro-abortion center, it would be called something else or perhaps operate as an abortion facility.

71.    SB 300 does not state a purpose or findings to support its compelled speech requirements.

72.    However, the bill's sponsors in speaking about the bill, indicated that it was designed to target pro-life groups specifically.

73.    The Senate Health & Human Development Committee met on May 22, 2024, to discuss SB 300.

74.    One of the co-sponsors of the bill, Senator Sturgeon, expressed the need for SB 300 because the purpose of pregnancy care centers' speech is to talk women "out of one of the options

that should be available" referencing abortion,[1] a regulation of speech based on its content and viewpoint.

75.    The House Health & Human Development Committee met on Jun 18, 2024, to discuss SB 300 and consider evidence for or against the bill. There was no evidence presented showing any complaint or example of a Delaware pregnancy care center acting in a way that would support SB 300.

76.    After failing to find any such evidence, and prior to taking the vote on SB 300, however, one of the bill's primary sponsors, representative Minor-Brown stated that "this conversation, unfortunately, it is pretty obvious, is literally a pro-life vs. pro-choice conversation and at the end of the day there are certain people that won't support this just because they may be pro-life vs. pro-choice. . . we just need to dispel all of the other chatter because that's what it comes down to, unfortunately, whether or not you support a person being able to make a choice for themselves and their life or not."[2]

77.    A Door of Hope discovered and understands that Planned Parenthood was involved in proposing and/or drafting SB 300.

78.    The law is gerrymandered in such a way as to apply the compelled speech requirements only to pro-life pregnancy care centers (which are all religious). The SB 300 exempts or excludes all pro-choice advocacy groups and pro-choice medical facilities.

79.    SB 300 defines "limited service medical facilities" by the following criteria:

A. The facility has a primary purpose of providing pregnancy related services.
B. The facility is not licensed by the state.

---

[1] *Watch & Listen*, Delaware General Assembly (May 22, 2024) (152nd General Assembly Senate Health & Human Development Committee Meeting at 11:58:30) https://legis.delaware.gov/WatchAndListen?view=1&category=75
[2] *Watch & Listen*, Delaware General Assembly (Jun 18, 2024) (152nd General Assembly House Health & Human Development Committee Meeting at 10:53:50) https://legis.delaware.gov/WatchAndListen?view=1&category=75

C. The facility does not have a licensed medical provider on staff or under contract who provides or directly supervises, in person, the provision of each service provided by the facility.

D. The facility does 2 or more of the following:

(1) offers obstetric ultrasounds, obstetric sonograms, or prenatal care to pregnant individuals.

(2) offers pregnancy testing or pregnancy diagnosis.

(3) advertises or solicits clients with offers to provide sonography, pregnancy tests, or pregnancy options counseling.

(4) has staff or volunteers who collect health information from clients.

(5) has staff or volunteers who are not licensed physicians, physicians assistants, advanced practice registered nurses, licensed practical nurses, registered nurses, medical assistants, radiologists, or ultrasound technicians but who dress in medical attire or uniforms that is typical of those professions, or are operating without proper medical supervision under any of those professions' licensed authorities.

*Id.*

80.    "Licensed medical provider" is defined as "a physician, physician assistant, advanced practice registered nurse, radiologist, or ultrasound technician, each of whom is licensed or certified in this state and is practicing within the provider's scope of practice. *Id*.

81.    SB 300 contradicts other Delaware law in its definition of Licensed Medical Provider because it lists ultrasound technicians, who are not required to be licensed under Delaware law, but does not include Registered Nurses who are required to be licensed by the Delaware Board of Nursing.

82.    Limited services medical facilities must "disseminate to a client on site, and in print or digital advertising materials including Internet Web sites, the following notice ("Compelled Statement"): 'This facility is not licensed as a medical facility by the state of Delaware and has no licensed medical provider who provides or directly supervises the provision of services'" *Id*.

83.    The onsite notice must be "in each of the following languages: (1) English; (2) Spanish; (3) Each language for which more than 10% of the overall population of this state speaks

at home, as measured by the U.S. Census. Where advertising materials are in a language other than English, the notice must be provided in that language; (4) Each language for which the limited services medical facility provides advertising materials." *Id*.

84.    The onsite notice must be "at least 11 inches by 17 inches and written in no less than 80-point type. The notice must be posted conspicuously in the entrance of the facility and at least 1 additional area where clients wait to receive services." *Id*.

85.    A Door of Hope advertises its free services and communicates its messages both in print and through digital means.

86.    A Door of Hope's print advertisements include sponsoring small, business card size ads in the local high school school's local sports calendar. The most recent advertisement is attached as Exhibit B.

87.    There is not sufficient room in such advertising for a wordy Compelled Statement as required by SB 300. The effect of complying with SB 300 would be to entirely preclude A Door of Hope from speaking in this medium as well.

88.    SB 300 does not define "digital advertising materials" beyond saying it includes "Internet Web Sites."

89.    Digital advertising materials or advertisements placed on "Internet Web Sites" have limits on their size, such as in the number of characters that can be used.

90.    For example, Google limits the number of characters posted in a headline, URL, or description line.

91.    Plaintiffs use digital advertising including Google advertising, social media posts, and other forms.

92.    Inserting the Compelled Statement into Plaintiffs' advertisements would severely restrict, or preclude altogether, the space and number of characters they could use to recite their own messages in digital advertisements or those placed on "Internet Web Sites."

93.    For instance, Google advertisements are limited to 120 characters between the headline (30 characters) and the description (90 characters).

94.    The required notice by itself contains 175 characters. Well over the amount allowable by a Google advertisement.

95.    If Plaintiffs were required to place the Compelled Statement in these advertisements, they would be precluded from lawfully advertising in this medium at all.

96.    Further, some of the advertising relates exclusively to options counseling, parenting programs, material support (such free maternity or baby supplies), or other non-medical services.

97.    But the text of SB 300 makes no exception for advertisements relating to non-medical services, so long as the speaker fits the definition of a limited service medical facility.

98.    A Door of Hope, and NIFLA's members in Delaware, are limited services medical facilities for the purpose of SB 300.

99.    A Door of Hope's primary purpose is providing pregnancy-related services.

100.    A Door of Hope is not licensed by the State of Delaware.

101.    Plaintiffs are not aware of any license it could have for the services it provides (e.g. it would not be licensed as a surgical center, a nursing home, or another licensed facility because it does not provide those services).

102.    In practice, this licensing requirement only affects pro-life pregnancy care centers.

103. Organizations that provide abortions onsite such as Planned Parenthood are provided licenses as office-based surgery facilities, thus they are not subject to SB 300. *See* SB 300 line 11-20 (amending § 2501K(3)).

104. Under SB 300 A Door of Hope must include in all of its advertisement (including print and digital) an untrue statement that it does not have "a licensed medical provider, on staff or under contract who provides or directly supervises, in person, provision of all its services."

105. A Door of Hope actually does have registered nurses which provide its medical services under the supervision of other licensed medical personnel.

106. Yet, under SB 300, A Door of Hope, would have to include in all advertisements that it does not have a "licensed medical provider" because:

    a. Under the definitions imposed by SB 300, A Door of Hope's registered nurses are not considered "licensed medical providers," even though they are considered so under other Delaware law;

    b. While A Door of Hope's medical services are actually supervised by a doctor who serves as the medical director and each ultrasound is read by a radiologist, these individuals do not do so "in person;"[3] and

    c. SB 300 does not make a distinction between supervision of medical and non-medical services, thus the Compelled Statement is required unless the narrow group of "licensed medical providers" supervise even the provision of non-

---

[3] The Compelled Statement requires the facility to misleadingly state that they do not have a "licensed medical provider" who "provides or directly supervises the provision of services" *at all* (SB 300 line 29), when the definition compels the statement even if there actually is a licensed medical provider directly supervising the services, but the supervision of RNs is not "in person." (SB 300 line 15).

- 15 -

medical services. The text does not restrict monitored services to only medical services.

107.    Under Delaware law registered nurses are licensed by the Delaware Board of Nursing to provide professional care and it is unlawful for individuals to practice this care unlicensed. Del. Code Ann. tit. 24, §§ 1902; 1909.

108.    A Door of Hope employs registered nurses who, among other services, provide pregnancy testing on site and conduct the ultrasound to send to the radiologist.

109.    A Door of Hope has a volunteer radiologist who interprets ultrasounds.

110.    A Door of Hope advertises to clients with offers to provide prenatal sonography, pregnancy tests, or pregnancy options counseling.

111.    A Door of Hope has staff or volunteers, specifically its registered nurses, who collect information from clients that relates to their pregnancies or possible pregnancies.

112.    Apart from the licensed physicians, radiologists, and registered nurses, no staff or volunteers at A Door of Hope wear medical attire or uniforms that would indicate the person is a physician, radiologist, or registered nurse.

113.    A Door of Hope is subject to SB 300.

114.    NIFLA's other members in Delaware also qualify as "limited services medical facility" under SB 300.

115.    Covered facilities which fail to comply with SB 300 are liable for a civil penalty of up to $10,000 for each violation and may have their assets frozen.

116.    SB 300 compels A Door of Hope and NIFLA's Delaware members (hereinafter "Plaintiff Facilities") to engage in government-mandated speech.

117.    The pregnancy discussions and help provided by Plaintiff Facilities are of an ideologically sensitive nature in accord with their religious beliefs.

118.    Forcing SB 300's Compelled Statement on Plaintiff Facilities' speech is detrimental to their mission.

119.    Plaintiff Facilities desire not to utter the Compelled Statement required by SB 300.

120.    Plaintiff Facilities desire to continue engaging in their speech while refusing to post, distribute, or otherwise communicate the required Compelled Statements.

121.    Plaintiff Facilities intend to not comply with SB 300.

122.    Plaintiff Facilities' refusal to comply with SB 300 would subject them to fines and prosecution by Defendant under SB 300.

123.    Plaintiff Facilities fear the harms of prosecution under SB 300 if they fail to comply.

124.    Plaintiff Facilities are non-profit organizations with limited funding and relatively small budgets.

125.    SB 300's penalties would significantly harm Plaintiff Facilities' ability to continue their expressive operations.

126.    SB 300 imposes three untenable choices on Plaintiff Facilities: succumb to their fear of prosecution and comply with SB 300 in violation of their expressive views and religious beliefs; continue their speech and services without complying with SB 300 and be prosecuted, penalized, and injured in their ability to pursue their expressive operations; or cease their expressive activities and services altogether.

127.    Plaintiffs face a credible threat of adverse state action due to SB 300.

128.    Requiring Plaintiff Facilities to utter SB 300's Compelled Statement forces Plaintiff Facilities to undermine the content, context and tone of the viewpoint that they wish to deliver in their pro-life messages.

129.    Requiring the religious Plaintiff Facilities to utter SB 300's Compelled Statement imposes a burden on their exercise of their religious beliefs. It requires them to undermine their pro-life message of love and support which they pursue because of their religious beliefs. And it forces them to discredit themselves by dishonestly stating they have no licensed medical providers on site when they all have registered nurses on site, volunteering or employed, who are licensed to provide medical care and provide or supervise all medical services, and are themselves supervised by the licensed medical director and work in conjunction with the radiologist for interpreting ultrasounds.

130.    SB 300 imposes an impermissible penalty and chill on Plaintiff Facilities' speech, subjecting Plaintiff Facilities to irreparable harm.

131.    SB 300's Compelled Statement on Plaintiff Facilities' advertising materials burdens the size, content, viewpoint and tone of their message.

132.    Enforcement of SB 300 will irreparably harm Plaintiff Facilities by infringing upon their First Amendment rights to free speech and religious exercise and their freedom from unbridled government discretion.

133.    Defendant is responsible for enforcing SB 300 against Plaintiff Facilities.

134.    Passage of SB 300 into law represents an imminent, concrete and reliable threat that Defendant will enforce SB 300 against Plaintiff Facilities.

135.    Enjoining Defendant from enforcing SB 300 is necessary to protect Plaintiff Facilities from the chill and punishment imposed on their rights.

136.     Each and all of the real and threatened enforcement actions alleged of the Defendant, their officers, agents, servants, employees, or persons acting at their behest or direction, were done and are continuing to be done under the color of state law, including the statutes, regulations, customs, policies, and usages of the State of Delaware.

137.     Plaintiffs have no adequate remedy at law.

### COUNT I

**Violation of the Free Speech Protections of the First Amendment of the U.S. Constitution**

138.     Plaintiffs incorporate by reference paragraphs 1 through 137.

139.     The First Amendment to the United States Constitution provides in relevant part: "Congress shall make no law . . . abridging the freedom of speech."

140.     The First Amendment is applicable to state and local governments by incorporation in the Fourteenth Amendment.

141.     SB 300 unconstitutionally restricts Plaintiff Facilities' rights of free speech, which includes the right to refrain from speaking, to choose how and when to deliver particular messages, and the right to refuse to speak a government-dictated message.

142.     SB 300 unconstitutionally forces Plaintiff Facilities, on pain of government penalty, to engage in untrue compelled speech that Plaintiff Facilities would not otherwise recite, that undermine Plaintiff Facilities' message, and that discredit Plaintiff Facilities' viewpoint from which they speak.

143.     SB 300 is unconstitutionally and substantially overbroad.

144.     SB 300's imposition of the Compelled Statement on Plaintiff Facilities' advertisements is an unjustified restriction of their ability to advertise their messages.

145.    SB 300 is unconstitutionally underinclusive, because, as applied, it omits other centers that provide pregnancy-related services because they offer abortions.

146.    SB 300 imposes an unconstitutional chill and penalty on Plaintiff Facilities' speech, and without declaratory and injunctive relief, will continue to do so.

147.    SB 300 is a content-based regulation of speech.

148.    SB 300 unconstitutionally discriminates against Plaintiff Facilities' speech based on their viewpoint because, as applied, it exempts from SB 300's requirements facilities that provide family planning or abortions.

149.    SB 300 poses an unconstitutional risk of viewpoint discrimination by conferring unbridled discretion on government officials to interpret SB 300's provisions in deciding which facilities must comply.

150.    The text of the ill-defined law is so overly broad and vague as to allow the government unbridled discretion in choosing who to prosecute and who to ignore.

151.    SB 300 is subject to strict scrutiny.

152.    SB 300 does not promote any legitimate, or compelling, government interest, and Defendant lacks any evidence or sufficient evidence to demonstrate the existence of such an interest.

153.    SB 300 is not tailored at all, much less narrowly tailored, to further any governmental interest, and it does not do so by a means least restrictive of Plaintiff Facilities' speech.

154.    Defendant has ample alternative channels to achieve any alleged interest without imposing SB 300's burdens on the speech of Plaintiffs.

155.    SB 300 is an unconstitutional restriction of speech under any standard of review.

156.    SB 300 is unconstitutional not only as applied to Plaintiff Facilities, but on its face as applied to any facility.

157.    Accordingly, SB 300 violates the First Amendment of the United States Constitution.

158.    Therefore, SB 300 and Defendant's enforcement thereof unconstitutionally infringes on Plaintiffs' rights, thereby entitling Plaintiffs to the relief requested below, pursuant to 42 U.S.C. §1983.

159.    WHEREFORE, Plaintiffs respectfully request that the Court grant the relief set forth hereinafter in the prayer for relief.

<u>COUNT II</u>
**Violation of the Rights of Plaintiff Facilities under the First Amendment's Free Exercise of Religion Clause**

160.    Plaintiffs incorporate by reference paragraphs 1 through 137 as if set forth fully herein.

161.    Plaintiff Facilities exercise their religion in their provision of pro-life information and services, in the way in which they choose to speak and not speak, and the content of what they speak or don't speak.

162.    Plaintiff Facilities are religious organizations that can and do exercise religion, including in promoting their pro-life message and services.

163.    Forcing Plaintiff Facilities to recite SB 300's Compelled Statement substantially burdens the exercise of religious beliefs of Plaintiff Facilities, undermining their pro-life message and the way in which they promote that message in pursuit of their religious beliefs.

164.    Forcing Plaintiff Facilities to state that they have no licensed medical providers directly supervising services while employing registered nurses who are licensed by the Delaware

Board of Nursing to provide medical services burdens the exercise of religious beliefs of Plaintiff Facilities, which prevent them from speaking dishonestly or misleadingly.

165.    SB 300 burdens Plaintiff Facilities' religious beliefs in that it requires the 175-character Compelled Statement in every advertisement, including digital advertisements, even when they are merely expressions of religious content.

166.    For example, an Easter post simply stating that "He is Risen" would be drowned out by the irrelevant and untrue Compelled Statement.

167.    Likewise, SB 300 would require government mandated speech to burden and drown out A Door of Hope's religious Christmas messages such as "Merry Christmas, friends! May the Prince of Peace fill your heart & home with hope." (Exhibit C comparing an actual post with what it may have had to look like with the Compelled Statement).

168.    The Compelled Statement would have also drowned out and inhibited A Door of Hope's recent post regarding Sanctity of Human Life Sunday quoting John 10:10. (Exhibit D comparing an actual post with what it may have had to look like with the Compelled Statement)

169.    SB 300 is not neutral or generally applicable, including because it exempts certain facilities that are licensed because they perform abortions.

170.    Defendant cannot offer sufficient justification to burden Plaintiff Facilities' free exercise of religion by means of SB 300.

171.    SB 300 was created to regulate "crisis pregnancy centers."

172.    "Crisis pregnancy centers" are pro-life as an exercise of their religious beliefs.

173.    The sponsors of SB 300 explicitly acknowledged that the passage of SB 300 revolved around whether individuals were pro-choice or pro-life.

- 22 -

174.    SB 300 was targeted with animus towards and to regulate pregnancy care centers with pro-life views who hold these views because of their religious convictions.

175.    SB 300 therefore violates Plaintiff Facilities' rights under the Free Exercise of Religion Clause.

176.    The First Amendment's Free Exercise of Religion Clause requires the government to satisfy strict scrutiny before it may burden an organization's exercise of religion in conjunction with exercising its rights of speech.

177.    SB 300 infringes on the hybrid of Plaintiffs' Free Exercise of Religion and Free Speech rights.

178.    Defendant cannot show a compelling interest for imposing SB 300 on Plaintiff Facilities, nor can Defendant demonstrate that SB 300 pursues its goals in a means least restrictive of Plaintiff Facilities' rights.

179.    Accordingly, SB 300 violates the Plaintiff Facilities' First Amendment rights of Free Exercise of Religion.

180.    WHEREFORE, Plaintiffs respectfully request that the Court grant the relief set forth hereinafter in the prayer for relief.

## PRAYER FOR RELIEF

Plaintiffs respectfully request the following relief:

A.    Declare SB 300 unconstitutional under the United States Constitution and in violation of federal statute on its face, and as applied to Plaintiffs;

B.    Enter preliminary and permanent injunctions against enforcement of SB 300;

C.    Award Plaintiffs the costs of the litigation, including reasonable attorneys' fees and expenses under 42 U.S.C. § 1988;

D.  Award any and all other relief the Court deems just and proper.

Respectfully submitted on this 12th day of February, 2025.

/s/ Andrew H. Meck
ANDREW H. MECK
Delaware Bar No. 6874 _____
WHITEFORD LAW, LLC
600 North King Street, Suite 300
Wilmington, DE 19801
(302) 353-4144
ameck@whitefordlaw.com

WILLIAM R. THETFORD*
Virginia Bar No. 92558
SIMMS SHOWERS, LLP
305 Harrison Street SE, Third Floor
Leesburg, Virginia 20175
(703) 771-4671
wrt@simmsshowerslaw.com

KEVIN H. THERIOT*
Arizona Bar No. 030446
ALLIANCE DEFENDING FREEDOM
15100 N. 90th St.
Scottsdale, AZ 85260
(480) 444-0020
ktheriot@adflegal.org

J. CALEB DALTON*
Virginia Bar No. 83790
ALLIANCE DEFENDING FREEDOM
44180 Riverside Pkwy
Lansdowne, VA 20176
(571) 707-4655
cdalton@adflegal.org

Attorneys for Plaintiffs

*Application for Admission Pro Hac Vice forthcoming